765 So.2d 799 (2000)
William C. BARTLETT, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-2319.
District Court of Appeal of Florida, First District.
August 7, 2000.
John C. Harrison of John C. Harrison, P.A., Shalimar, for Appellant.
Robert A. Butterworth, Attorney General; Sonya Roebuck Horbelt, Assistant Attorney General, Tallahassee, for Appellee.
BENTON, J.
William C. Bartlett appeals his convictions for grand theft of a truck, petit theft of its contents, and (in order to get the truck) trespass on property Russell Jones leased. The evidence was insufficient to establish the requisite intent to steal the truck. Uncontroverted evidence showed that Mr. Bartlett held title to the truck when he took the truck under an apparent claim of right. We affirm the convictions for petit theft and trespass but we reverse the grand theft conviction.
A person who takes possession in the good faith belief that he or she has a right to the property lacks the requisite intent to commit theft. See J.L. v. State, 566 So.2d 1383, 1384 (Fla. 1st DCA 1990) ("If J.L. took the property under the honest but mistaken belief that Dumas had given her permission, she cannot be found guilty of theft."); Thomas v. State, 526 *800 So.2d 183, 184 (Fla. 3d DCA 1988) ("It is well settled that a well-founded belief in one's right to the allegedly stolen property constitutes a complete defense to a charge of theft."); Mitchell v. State, 516 So.2d 22, 22 (Fla. 3d DCA 1987) (finding that the record contained no evidence establishing criminal intent in part because the defendant "believed in good faith that she had a right to the [property]"); see also Board of Regents v. Videon, 313 So.2d 433, 435 (Fla. 1st DCA 1975). At the conclusion of the state's case here, the defense moved for judgment of acquittal on grounds the state had failed to prove "a prima facie case that [Mr. Bartlett] at the time of the taking of the vehicle had the intent to steal the vehicle."
Under Florida law, a theft requires proof of a taking animo furandi, i.e., with the intent to steal. As was explained in Sassnett v. State, 156 Fla. 490, 23 So.2d 618, 619 (Fla.1945),
[a]n essential element of this crime, which must be established by testimony beyond a reasonable doubt, is that the taking was animo furandi, or with the intent to steal, and `where it clearly appears that the taking was perfectly consistent with honest conduct, although the party charged with the crime may have been mistaken, he cannot be convicted of larceny.' Cooper v. State, 82 Fla. 365, 90 So. 375 [(Fla.1921)].
See also Kilbee v. State, 53 So.2d 533, 536 (Fla.1951) ("It is essential in order to sustain a conviction of larceny that the evidence adduced by the State establishes beyond a reasonable doubt that the property was taken animo furandi. Likewise, it is well established law that where one takes the property of another, honestly believing that he has a right to it, or, in other words, under a bona fide claim of right, there can be no larceny." (citations omitted)); Maddox v. State, 38 So.2d 58, 59 (Fla.1948).
After agreeing to purchase an "'88 Dodge Dakota pick-up" from Mr. Bartlett, a long-time friend ("[b]een knowing him all my life"), Mr. Jones took possession of the truck and began making monthly installment payments. But before the full purchase price of two thousand dollars had been paid, Mr. Bartlett lent Mr. Jones another sum of money. Eventually, because that sum had not been repaid, Mr. Bartlett took the truck, asserting in effect a security interest in the truck and a right to repossess it, even though the originally agreed-upon installment payments had by then been made.
Mr. Jones suspected what had happened and why, he testified, and did not report the truck as stolen for seventeen days. He thought that Mr. Bartlett had repossessed the truck because of the outstanding debt. Deputy Sheriff Aubrey Carroll testified:
I said, "Mr. Bartlett, I understand that you went out to Russell Jones' house and took a truck out of his yard." And he said, "Yes, I did." ... And I said, "It's also my understanding that Mr. Jones and you had an agreement and he purchased the truck and has been in possession of the truck and has paid you for the truck." And he said, "That's right but he owes me some other money." And I said, "Well, I don't think you can go out there and take the truck under those circumstances." He said, "Well, I am not giving the truck back until he pays me the money that he owes me."
At issue is Mr. Bartlett's intent at the time he took the truck. See Iglesias v. State, 676 So.2d 75, 76 (Fla. 3d DCA 1996); Stramaglia v. State, 603 So.2d 536, 538 (Fla. 4th DCA 1992); Szilagyi v. State, 564 So.2d 644, 645 (Fla. 4th DCA. 1990). At all pertinent times, the truck was registered in Mr. Bartlett's name. Mr. Jones acknowledged that, initially, he too thought Mr. Bartlett had a right to take the truck.
In order to prove specific felonious intent, the state can rely on circumstantial evidence. Since intent necessarily involves the state of mind of the perpetrator, *801 very often circumstantial evidence is the only evidence available to prove intent. However, such circumstantial evidence must exclude every reasonable hypothesis but that of guilt.
Szilagyi v. State, 564 So.2d at 646; see also McGough v. State, 302 So.2d 751, 755 (Fla.1974) ("Where an attempt is made by the State to prove [knowledge and intent] through circumstantial evidence, such proof must not only be consistent with guilt but also inconsistent with any other reasonable hypothesis of innocence.").
The requirement of animus furandi survived codification of what was formerly the common law crime of theft. Although a claim of a good faith taking may no longer be raised as a defense in robbery cases, see Daniels v. State, 587 So.2d 460, 462 (Fla.1991); Thomas v. State, 584 So.2d 1022, 1023 (Fla. 1st DCA 1991), the defense remains available in theft cases. See Jackson v. State, 468 So.2d 346, 348 (Fla. 1st DCA 1985); Adams v. State, 443 So.2d 1003, 1006 (Fla. 2d DCA 1983). See generally State v. Dunmann, 427 So.2d 166, 169 (Fla.1983); State v. Allen, 362 So.2d 10, 11 (Fla.1978).
The state had the burden to establish "specific intent to commit theft, which is an essential element of the crime." Redding v. State, 666 So.2d 921, 922 (Fla. 1st DCA 1995). The state had the burden therefore to exclude Mr. Bartlett's hypothesis of innocence by virtue of a good faith claim to the right to possession. See McGough, 302 So.2d at 755. Considerable evidence supported the defense theory that Mr. Bartlett took the truck in a good faith belief that he had a legitimate right to do so. When Mr. Bartlett took (repossessed) the truck, legal title was still in his name. The state failed to meet its burden.
The convictions for trespass and for petit theft are affirmed. The conviction for grand theft is reversed.
BROWNING, J., CONCURS WITH OPINION; MINER, J., CONCURS AND DISSENTS WITH OPINION.
BROWNING, J. concurring.
I concur with Judge Benton's majority opinion. I write only to amplify the factual basis that impels my joining in the majority opinion.
Appellant and victim were merely friends who "fell out" over a business transaction, and their differences concerning entitlement to possession of the truck constitute a civil matter, rather than a criminal one. This conclusion is based upon the facts that Appellant and victim, as stated, were friends; victim had often borrowed money from Appellant; Appellant had retained the title certificate to the truck, and Appellant was named as owner of the truck in the title certificate, which implies a right of repossession by Appellant; victim believed Appellant had the legal right to repossess the truck; victim owed Appellant money at the time Appellant claimed possession of the truck, albeit such funds were loaned after the sale of the truck, but before the agreed purchase price for the truck was paid by victim, which implies a future advancement by the conduct of the parties; the first hint of Appellant's not having the right to repossess the truck came from a deputy sheriff some 19 days after Appellant repossessed the truck from victim; and much of the state's evidence is based upon a conversation between Appellant and a deputy sheriff who was acting similar to a mediator between Appellant and victim by attempting to have Appellant return the truck to victim without initiating a prosecution. Appellant's conduct as exhibited to a deputy sheriff some 19 days after Appellant's repossession of the truck was less than commendable, but Appellant's offensive conduct does not make him the perpetrator of grand theft of the truck beyond a reasonable doubt.
MINER, J., concurring and dissenting.
Like my colleagues in the majority, I would affirm appellant's convictions for *802 trespass and petit theft. Unlike the majority, I would also affirm Bartlett's conviction for grand theft of the pickup truck involved here.
While I agree that uncontroverted evidence supports the fact that Mr. Bartlett "held" title to the truck in question in the sense that it was titled in his name, there is no credible evidence of any kind that he took the truck "under an apparent claim of right." That contention was made in his behalf by his defense counsel. Appellant himself never offered evidence of any kind, testimonial or otherwise, from which a jury could conclude that his intent was anything other than felonious at the time he went on Jones' property and took the truck Jones had completed paying for. To be sure, appellant "held" title to the truck at the time he wrongfully refused to deliver the certificate of title to Jones a day or so before trespassing on Jones' property and taking the truck.
In Uber v. State, 382 So.2d 1321 (Fla. 1st DCA 1980), this court reiterated the proposition that in prosecutions of the type involved here, proof by the state of felonious intent is essential to a conviction. In reversing Uber's conviction, the court reminded us that the question of intent is normally a jury determination. Of particular interest in Uber is the repetition of an observation made previously in Board of Regents v. Videon, 313 So.2d 433, 435 (Fla. 1st DCA 1975):
The intent with which an act is done is an operation of the mind and, therefore, is not always capable of direct and positive proof. The intent may be presumed from the facts and circumstances surrounding the act of taking. It is then incumbent upon the taker to go forward with the evidence and show a lack of criminal intent on his part. Such can be done by presenting evidence that it was an honest mistake; that he believed he had a right to apply the property to his own use. When a taking or appropriation to one's own use is with an honest belief that the taker has the right to take the property (to apply it to his own use), there is no larceny, even though the taker may have been mistaken.
Uber, 382 So.2d at 1322 (Emphasis added).[1]
In the case at bar, appellant, the "taker" did not go forward with the evidence much less show a lack of criminal intent on his part. The sum total of his showing of a lack of criminal intent was his counsel's questioning of the only two state witnesses, Jones (the victim) and Deputy Carroll, regarding what they thought was in Bartlett's mind when he went on to Jones' property less than 24 hours after he had been told by Jones not to do so. At best, counsel's characterization of the taking of the truck Jones had paid for as a "repossession" seems to me to be but a generous play on words, certainly not "evidence" that Bartlett was possessed of an honest belief that he had the right to take the truck and apply it to his own use as he did.[2]
There is no evidentiary dispute regarding the facts and circumstances surrounding the act of taking of Jones' truck which demonstrate, at least in my view, an inconsistency with the defense theory (which is unsupported by any competent evidence) that Bartlett in good faith believed that he had a legitimate right to take the truck.
1. On the day prior to the taking, Bartlett advised Jones that he was going to withhold title to the truck until Jones repaid *803 other money he had borrowed or as one of the attorney's described it, Bartlett was going to hold the truck, its title, and Jones' personal property "hostage" until Jones' collateral debt to him was repaid.
2. On the day Bartlett told Jones he was not going to deliver title to the truck, the two exchanged "words" and Jones invited Bartlett to leave the property and not to return.
3. Bartlett returned to Jones' property the following day during Jones' absence and took the truck which contained a number of items of personal property belonging to Jones (tires and rims, tools, groceries, etc.).
4. Bartlett does not take issue with the fact that Jones paid the agreed upon sum of $2000 for the truck in question.
5. After Bartlett took the truck Jones fully paid for, he held it for some two and a half weeks and made no attempt to contact Jones regarding the whereabouts of the truck or its contents.
6. Jones testified initially that he thought his brother, who was also his guardian and who had a key to the truck, had borrowed it. When he found out otherwise, he located the truck in the possession of Bartlett's son.
7. When Deputy Carroll received Jones' complaint about the missing truck, he contacted Bartlett and was told by Bartlett that he (Bartlett) did not care what the law was and that he would not return the truck or Jones' personal property until all money owed him by Jones was paid. He invited Deputy Carroll to arrest him with the words that he could "afford" to make bail. Deputy Carroll then took him up on his invitation.[3]
8. There was no evidence of any type of security agreement between Bartlett and Jones related to the other money Jones owed Bartlett.[4] The above stated facts and circumstances seem at odds with what his counsel describes as Bartlett's good faith belief that he had a right to do what he did.
To conclude, at most there is nothing whatsoever in the record from which it can be reasonably concluded that appellant, the "taker," went forward with any evidence to show a lack of criminal intent on his part when he went upon Jones' home-site and "repossessed" the truck Jones had purchased and paid for. At the very least, Bartlett's subjective intent when he took the truck was a jury question and there was more than sufficient evidence to sustain the jury's verdict of guilt as to all three charged offenses which came after less than a half-hour of deliberations. Accordingly, I would affirm Bartlett's convictions as to all charges.
NOTES
[1] In each of the cases cited in support of the majority opinion regarding good faith belief, the accused either testified before the jury regarding his intent or produced other evidence showing a lack of criminal intent. See J.L. v. State, 566 So.2d 1383, 1384 (Fla. 1st DCA 1990); Thomas v. State, 526 So.2d 183, 184 (Fla. 3d DCA 1988); Mitchell v. State, 516 So.2d 22 (Fla. 3d DCA 1987); Board of Regents v. Videon, 313 So.2d 433 (Fla. 1st DCA 1975).
[2] It hardly need be repeated that what attorneys say is not evidence.
[3] The deputy testified, as follows: [A]ppellant said ..., "I am not giving him the truck until he pays me all the money he owes me. But he (Bartlett) stated to me that the money that he (Jones) owed him was for other reasons and the truck wasn't mentioned."
[4] Jones testified under oath that after he finished paying for the truck, appellant told him that "he would not give me the title to [the truck] because I owed him some money." Jones further testified that when Bartlett had lent him money a couple of months earlier he said nothing about holding the truck title, there was no security agreement, and the loan had nothing to do with the truck.

Q: So you had paid for the truck at that time?
A: Right.
Q: And it was your truck?
A: I thought it was.
Q: And he informed you that he was going to hold that title until you paid the rest of your [other] loan off?
A: Right.
Q: And that was the first time you heard of it?
A: That's the first time I ever heard of it.
Q: When you paid the truck off?
A: Right.