972 So.2d 982 (2007)
Gary A. SIPLIN, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-4071.
District Court of Appeal of Florida, Fifth District.
December 28, 2007.
Rehearing Denied January 31, 2008.
*984 Bruce S. Rogow and Cynthia E. Gunther, of Bruce S. Rogow, P.A., Fort Lauderdale, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
LAWSON, J.
Gary Anthony Siplin appeals his convictions for grand theft, in violation of section 812.014(2)(c)(2), Florida Statutes (a third degree felony), and for using the services of a state employee during working hours in furtherance of a political campaign, in violation of section 106.15(3), Florida Statutes (a first degree misdemeanor). For the reasons explained below, we reverse both convictions and remand with directions that Mr. Siplin be acquitted on the felony charge. On remand, the State[1] may retry Mr. Siplin on the misdemeanor charge, consistent with this opinion.

Grand Theft Conviction
In count 1 of its information, the State charged Mr. Siplin with grand theft for knowingly depriving the state of Florida of the services of its employee, Naomi Cooper, between July 31 and November 1, 2004. The theory of the case was that the state paid Ms. Cooper about $3,000 per month for the months of August, September and October 2004, to work full-time as Mr. Siplin's legislative aide, while she was in fact working full-time on Mr. Siplin's campaign for re-election as a state senator. Ms. Cooper testified for the State that both she and Mr. Siplin planned for her to work full-time on his campaign, and also knew that she could not do so while being paid to work as his legislative aide.
According to Ms. Cooper, she had contracted with the state Democratic party to *985 work though November 2, 2004, on Mr. Siplin's campaign, for which she was to be fully compensated by the Democratic party. The Senate's written policies allowed Senate employees to take a leave of absence to work on political campaigns, and expressly allowed leave with pay, for this purpose, so long as the employee was "on authorized annual leave [using accrued vacation time]." It was undisputed at trial that Mr. Siplin instructed Ms. Cooper to do whatever was necessary to arrange her required leave of absence from the state, so that she could legally run his campaign.
At that time, the Senate did not collect time sheets or any other record of time actually worked from its employees. Instead, each Senate office was required to keep track of time worked. If an employee took time off, the senator, or his or her designee, was required to report the time not worked to the legislature's payroll office, including an explanation of whether the employee was to be paid from accrued annual leave (vacation time), compensatory time,[2] or sick leave, or was simply taking leave without pay. This was normally done by computer entry, and Ms. Cooper was Mr. Siplin's designee for dealing with payroll issues for his office.
According to Ms. Cooper's trial testimony, she believed that she had fully complied with Senate policies by: (1) sending in a letter requesting paid annual leave from. June 1, 2004 until July 31, 2004 (which accounted for most of her accrued vacation time); and (2) sending in a copy of her contract with the state Democratic party along with a form entitled "Permission for Outside Employment," indicating that she would be working as a consultant on Mr. Siplin's re-election campaign. The contract period ran from May 18 to November 2, and these dates are clearly noted on the face of the one-page contract. In response, Ms. Cooper received a letter from the Senate confirming that: (1) her paid leave was approved for the period from June 1 to July 31; and (2) that her outside employment had also been approved. Ms. Cooper testified that she understood this letter to mean that she had been approved for outside work for the entire time covered by the contract submitted with the form.
There are two problems with Ms. Cooper's testimony. First, although the contract itself indicates that Ms. Cooper would be working on Mr. Siplin's campaign until November 2, the form she submitted (and had Mr. Siplin sign) only requested approval for outside employment from June 1 to July 31. Second, Ms. Cooper continued to receive her full state salary for the entire period of time that she was working on the campaign, even though she only arranged for a paid leave through July 31. Ms. Cooper was, of course, aware of this, because the money was automatically deposited into her account each month, and the monthly pay summaries were mailed to her at her residence. Ms. Cooper testified that when she continued to receive a state salary check after July 31, she thought she was being paid for accrued, compensatory time and/or sick leave. However, she never mentioned that she was still getting paid by the state to Mr. Siplin, or anyone else in his Senate office. Significantly, the State did not present testimony from any witness indicating that Mr. Siplin knew Ms. Cooper continued to receive her state salary while working on his re-election campaign.[3]
*986 Instead, the State argues that Mr. Siplin's, knowledge should be inferred from the "Permission For Outside Employment" form that he signed, since it only listed the dates of Ms. Cooper's paid leave, and his presumed understanding of the Senate's practice of automatically paying an employee unless a senator's office reported the employee's absence from work. The problem with this theory is that the State's own witnesses testified without any contradiction that: (1) Ms. Cooper regularly acted as Mr. Siplin's designee for purposes of reporting time away from work; and (2) Mr. Siplin instructed Ms. Cooper to arrange for her time off so that she could legally work for the campaign. Assuming that Mr. Siplin actually studied the outside employment form when it was presented for his signature (so that he recognized the discrepancy between the dates in the form and the dates of Ms. Cooper's planned absence), it is just as reasonable to infer that Mr. Siplin believed the form only needed to encompass the time covered by Ms. Cooper's paid leave as it would be to infer that he thereby knew that Ms. Cooper would be paid by the state from August 1 to October 31.[4] Because Ms. Cooper herself normally would have reported her time away, it is also equally reasonable to infer from these facts that Mr. Siplin assumed that Ms. Cooper had arranged for her unpaid leave by computer entry, consistent with their normal office practice and consistent with his express instructions to her.
Although a jury is normally free to "draw or refuse to draw inferences from the evidence presented," Ford v. State, 251 So.2d 562, 563 (Fla. 3d DCA 1971), a special standard applies when the state attempts to secure a conviction based solely on circumstantial evidence: "Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." McArthur v. State, 351 So.2d 972, 976 (Fla.1977) (citations omitted). This standard is not met here because the State's evidence does not suggest guilt to the exclusion of all other reasonable inferences. See also, Walker v. State, 957 So.2d 560, 577 (Fla.2007) (recognizing that in circumstantial evidence cases a judgment of acquittal is appropriate if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt).
Of course, a strong case could be made that Mr. Siplin should have carefully studied the form that he signed, noted the potential discrepancy, and followed through with the payroll office himself, to make sure that the matter delegated to Ms. Cooper was handled correctlyor should have had some procedure in place to audit an employee who he trusted to handle her own payroll submissions. However, a criminal conviction for theft cannot stand based upon negligence in handling office paperwork or procedures.
*987 "Under Florida law, a theft requires proof of taking . . . with the intent to steal." Bartlett v. State, 765 So.2d 799, 800 (Fla. 1st DCA 2000). And, "where it clearly appears that the taking was perfectly consistent with honest conduct, although the party charged with the crime may have been mistaken, he cannot be convicted of larceny." Id. (quoting Cooper v. State, 82 Fla. 365, 90 So. 375 (1921)), Because the State's evidence was insufficient to prove beyond a reasonable doubt that Mr. Siplin even knew that Ms. Cooper was receiving a state paycheck after July 31, while working on his campaign, the State clearly cannot show that he intended to steal from the state.
Mr. Siplin properly challenged the sufficiency of the State's evidence on count 1 both by pretrial motion and through a timely motion for judgment of acquittal. The issue was therefore preserved for appellate review, and reversal of the conviction is required. Bartlett, 765 So.2d at 800; Walker, 957 So.2d at 577. Because it would violate double jeopardy principles to allow the State to try Mr. Siplin a second time on this charge when its evidence was insufficient to sustain a conviction at the first trial, see Tibbs v. State, 397 So.2d 1120 (Fla.1981), affirmed, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), we remand with directions that the trial court enter a judgment of acquittal as to this charge. Mr. Siplin cannot be re-tried on count 1. Id.

Misdemeanor Conviction
In count 2 of its information, the State charged Mr. Siplin with violating section 106.15(3), Florida Statutes (2004), by using the services of two state employees, Sarah Caraballo and Jose Bosque, during work hours, in furtherance of his candidacy for public office. Section 106.15(3) reads, "A candidate may not, in the furtherance of his or tier candidacy for nomination or election to public office in any election, use the services of any state, county, municipal, or district officer or employee during working hours." A violation of this statute constitutes a first degree misdemeanor.
Before trial, Mr. Siplin filed a motion to dismiss this count, arguing that section 106.15(3) was unconstitutionally vague, overbroad and violative of substantive due process. This motion was denied, and. Mr. Siplin makes these same arguments on appeal. At the outset, we note that in contrast to count 1, the State's evidence on this count was sufficient to sustain a verdict of guilt. Both Mr. Bosque and Ms. Caraballo were employed by the state of Florida, working in Mr. Siplin's Senate office during the 2004 campaign season. Although Mr. Bosque testified that he did no political campaign work for Mr. Siplin on state time,[5] Ms. Caraballo testified that she did. According to Ms. Caraballo, Mr. Siplin directed her to work on political campaign ads, answer campaign phone calls, and help with voter registration and absentee ballots, for the campaign, all during *988 state office hours. She testified that she confronted Mr. Siplin about this, explaining that she was not supposed to work on his political campaign during her state office hours, and he told "not to get caught"but that she needed to help with the campaign because she would not have a job unless he got re-elected. Obviously, Ms. Caraballo's testimony would be sufficient to support a guilty verdict on the misdemeanor charge, but for Mr. Siplin's legal challenge to the statute itself.
As previously noted, Mr. Siplin challenges section 106.15(3) as vague, over-broad and violative of due process. We find that Mr. Siplin lacks standing to raise his vagueness challenge, and will briefly address this issue first. "The standard for testing vagueness under Florida law is whether the statute gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct." Brown v. State, 629 So.2d 841, 842 (Fla.1994) (citations omitted). "A statute is not void for vagueness if the language "`conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" Id.
Mr. Siplin argues that the statute is unconstitutionally vague because the terms "in furtherance of," "services," and "working hours," are imprecise and fail to adequately warn of what conduct is proscribed. Although these terms appear relatively clear, we must determine whether Mr. Siplin has standing to assert a vagueness challenge before applying, the vagueness test. See, e.g., J.L.S. v. State, 947 So.2d 641, 646 (Fla. 3d DCA 2007). The general rule is that a defendant cannot complain of a statute's "vagueness as applied to the hypothetical conduct of others" when "the record demonstrates that [he or she] engaged in some conduct clearly proscribed by the plain and ordinary meaning" of the statute. Id. (quoting Sieniarecki v. State, 756 So.2d 68, 75 (Fla.2000)). Here, Mr. Siplin questions whether picking up a candidate's suit at the dry cleaners or driving a candidate to a barber would be a "service" that could be viewed as undertaken "in furtherance of a candidacy for public office. However, the law does not allow Mr. Siplin to challenge the statute as vague based upon these hypothetical scenarios given the State's evidence in this case that Mr. Siplin ordered Ms. Caraballo to answer campaign phones, work on campaign ads, and handle other tasks unquestionably central to the operation of his political campaign during her state working hours. Id. Accordingly, we find that Mr. Siplin lacks standing to raise a vagueness challenge. Id.
Mr. Siplin's overbreadth and due process challenges both relate to the fact that section 106.15(3) does not expressly contain a guilty knowledge or mens rea requirement. Applied literally, the statute would criminally punish a candidate whenever a state employee worked on his or her campaign on state time, even without the candidate's knowledge or approval.[6] For example, assume a state employee volunteers to stand on a street *989 corner during his state work hours (and without taking time off), to hold a sign in a large group of supporters, with a candidate on election day. Without a mens rea element, the candidate whose name appears on the sign could be prosecuted for the state employee's misdeed, even though the candidate did not know the volunteer personally; did not solicit the help; and, had no idea that the person joining him to spread his campaign message was even a state employee. If applied in this fashion, we agree with Mr. Siplin that this statute would be unconstitutional on both overbreadth[7] and substantive due process[8] grounds.
However, criminal statutes are generally read to include a mens rea element, even when not expressly included in the statute. E.g., State v. Giorgetti, 868 So.2d 512, 515-516 (Fla.2004); see also, State v. Oxx, 417 So.2d 287 (Fla. 5th DCA 1982); Deehl v. Knox, 414 So.2d 1089 (Fla. 3d DCA 1982); but see, Suit v. State, 906 So.2d 1013, 1022 (Fla.2005) (recognizing this rule but concluded that the statute in that case was "incapable of a narrower construction because there is no logical way to read a specific intent element into the statute as it is currently written."). As explained in Giorgetti, there are two reasons for this rule. First, because "guilty knowledge or mens rea was a necessary element in the proof of every crime" at common law, it is presumed that the legislature also intends to include a guilty knowledge element in its criminal statutes, absent an express statement to the contrary. 868 So.2d at 515-16. Second, criminal statutes that fail to include a mens rea element usually raise due process concerns, and courts are "obligated to construe statutes in a manner that avoids . . . [holding a statute] unconstitutional." Id. at 518.
Given this precedent, we believe that we must read section 106.15(3) as containing a mens rea requirement.[9] Although this *990 reading of the statute resolves Mr. Siplin's constitutional challenges to section 106.15(3), it does not cure the fact that the jury in Mr. Siplin's case was instructed that they could convict him with no mens rea element. Mr. Siplin addressed this issue at trial, and requested that the jury instructions include a mens rea element. Although Ms. Caraballo testified that Mr. Siplin personally pressured her to perform campaign work during state office hours (which, of course, constitutes direct evidence of mens rea), her testimony conflicted with other evidence. For example, Mr. Bosque testified that he never witnessed Mr. Siplin pressuring any employee to work on the political campaign, but did see Ms. Caraballo using work hours for personal matters unrelated to the campaign. He also testified to facts from which a jury could conclude that Ms. Caraballo held a personal bias against Mr. Siplin. Mr. Bosque testified that while Ms. Caraballo worked as Mr. Siplin's legislative aide she talked negatively "all the time" about Mr. Siplin, his "opinions on community matters," "how he ran his office," "how he ran his personal life," and his "politics." Ms. Cooper also testified that she never saw Mr. Siplin ask any Senate employee to "do campaign work during working hours," and that the "office culture and policy" was that political campaign work "should not be done" during state work hours. Ms. Cooper also testified that she made sure that there was a complete separation between Mr. Siplin's campaign office, which she was running, and his legislative office. In addition to the legal requirement for separation, Ms. Cooper testified that she did not trust Ms. Caraballo with any campaign information because Ms. Caraballo belonged to a different political party.
Because of the evidence conflicting with Ms. Caraballo's account, and impeaching her credibility based upon personal bias or prejudice, we cannot find that the failure to include a mens rea instruction on count 2, as requested by Mr. Siplin at constituted harmless error. See, e.g., Cox v. State, 966 So.2d 337, 347 (Fla. 2007) ("The harmless error test . . . requires the State "as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.") (quoting State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986)). Accordingly, even though we are applying a limiting construction to alleviate the potential due process and overbreadth infirmities in the statute, Mr. Siplin's conviction must be reversed and remanded so that he can have the case tried before a jury properly instructed on the statute, with a mens rea requirement, should the State elect to prosecute the misdemeanor on remand. If the State elects not to proceed to trial on this charge again, it can simply nolle pros count 2. If it elects to go forward on the charge, the matter should be transferred to county court, for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] We capitalize "State" when referring to the State of Florida acting in its prosecutorial role, as a party in this case.
[2] When a Senate employee was required to work in excess of forty hours in any given week, the overtime hours were banked as "compensatory time." Accrued compensatory time could then be used, like accrued vacation time, to secure pay for time away from work.
[3] Although the Senate's routine practice had been to send monthly pay summaries to each local Senate office for distribution to employees, this practice was suspended (at least for Mr. Siplin's office), in response to the disruption caused by the 2004 hurricane season. Mr. Siplin's local Senate office was rendered uninhabitable as a result of storm damage, and he had to relocate the office to temporary quarters. Several State witnesses testified that because Ms. Cooper's state pay summaries were sent to her home during the entire time she was working on Mr. Sipfin's campaign, Mr. Siplin's office would not have received any documentation that would have put him on notice that Ms. Cooper was being paid her state salary for the months of August, September and October of 2004.
[4] Because Siplin did not testify during the trial, there is no direct evidence of what he knew or believed other than the somewhat confusing Senate document he signed.
[5] Mr. Bosque testified that he was hired onto Mr. Siplin's Senate staff shortly before Hurricane Charley struck Central Florida in August of 2004. Charley was soon followed by Hurricanes Frances and. Jeanne. Mr. Bosque explained that his primary role in the office quickly became community outreach, or a "campaign" to connect citizens affected by the storms with needed services. Although Mr. Bosque testified to his joint efforts with Mr. Siplin, during work hours, on the "campaign," he clarified that he was referring to this informational campaign, and not to Mr. Siplin's political campaign. Mr. Bosque testified that he never saw Mr. Siplin pressure anyone on his Senate staff to work on the political campaignbut that the pressure was simply to help the community in the wake of the storms.
[6] Although the State presented sufficient evidence from which a jury could conclude that Mr. Siplin knew of Ms. Caraballo's campaign activities, on his behalf and during work hours, the type of standing requirement applicable to Mr. Siplin's vagueness challenge does not apply to his overbreadth or due process claims. An overbreadth challenge based upon infringement of First Amendment rights may be raised "even by one who does not show that his own conduct is innocent and not subject to being regulated by a narrowly drawn statute." State v. Ashcraft, 378 So.2d 284, 285 (Fla.1979). In other words, a litigant need not show that his conduct is protected by the First Amendment, but rather, that enforcement of the statute may cause "others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). This relaxed standing requirement is allowed for First Amendment overbreadth challenges because statutes that restrict the exercise of First Amendment rights may have a chilling effect on such rights and must be "narrowly tailored" to address compelling government interests. Id. at 611-12, 93 S.Ct. 2908 (1973). Additionally, the State has not raised a standing challenge to Siplin's substantive due process claim, and we are not aware of such a requirement in this context.
[7] Overbreadth "refers to a challenge to a statute on the constitutional ground that it achieves its governmental purpose, to control or prevent activities properly subject to regulation by means that sweep too broadly into an area of constitutionally protected freedom." State v. Gray, 435 So.2d 816 (Fla. 1983) (citing Broadrick, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830). Here, the State obviously has a legitimate interest in guarding state funds by restricting its employees from engaging in personal activities on state time. However, when judged in relation to the statute's legitimate purpose, we conclude that the lack of a mens rea requirement in the statute would result in a real and substantial infringement of First Amendment rights by subjecting candidates who unwittingly violated the statute (while simply running a campaign in the legitimate exercise of First Amendment rights) to criminal prosecution.
[8] The right of substantive due process arising out of the Fourteenth Amendment to the United States Constitution and Article 1, Section 9 of the Florida Constitution prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." Hudson v. State, 825 So.2d 460, 465 (Fla. 1st DCA 2002) (quoting United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Generally, it violates substantive due process to criminalize purely innocent conduct. See, e.g., Giorgetti, 868 So.2d 512 (Fla.2004).
[9] This can easily be accomplished by simply inserting the word "knowingly" into the statute before the word "use." Thus, the statute would read as follows: "A candidate may not, in the furtherance of his or her candidacy for nomination or election to public office in any election, knowingly use the services of any state, county, municipal, or district officer or employee during working hours." (emphasis added). This construction protects innocent activity, and thereby saves the statute.