980 So.2d 528 (2008)
Ernest PAGE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D07-21.
District Court of Appeal of Florida, Fifth District.
March 7, 2008.
Rehearing Denied April 30, 2008.
*529 Roy D. Wasson, of Wasson and Associates, Chartered, Miami, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
Ernest Page appeals his convictions for bribery by a public official and receiving unlawful compensation for official behavior, in violation of sections 838.015(1) and 838.016(2), Florida Statutes (2005), respectively. In the bribery by public servant count, the State alleged that Page, an Orlando City Commissioner, did
corruptly request or solicit any pecuniary or other benefit not authorized by law with an intent to influence the performance of any act or omission, to-wit: approval of the 826 apartment unit development project in SOUTHWEST ORLANDO, believed to be within the official discretion of the public servant, to-wit: ERNEST PAGE, in violation of, or in performance of a public duty, for himself or another, to-wit: SOUTHWEST UNITED COMMUNITIES, INCORPORATED, a company that the said ERNEST PAGE was President or an employee of during the times alleged herein.
In the receiving unlawful compensation for official behavior count, the State alleged that Page, an Orlando City Commissioner, did
corruptly request or solicit any pecuniary or other benefit not authorized by law, for the present or future exertion of any influence upon or with any other public servant, to-wit: the Orlando City Council and its housing Department, regarding any act or omission, to-wit: approval of the 826 apartment unit development project in SOUTHWEST ORLANDO, which was believed to have been within the official discretion of the other public servant, in violation of a public duty, or in performance of a public duty.
After his trial, Page was found guilty as charged on both counts. On appeal, Page argues that the trial court should not have let the jury decide his fate because the State failed to present any evidence establishing the various elements of these crimes. We have carefully considered each of Page's arguments and find them to be without merit. We write only to discuss Page's chief argument: that the State's evidence that he corruptly solicited a pecuniary benefit was at best circumstantial and failed to exclude the possibility that he was acting solely for the betterment of his community.
We review the trial court's denial of a motion for judgment of acquittal under the de novo standard. Isenhour v. *530 State, 952 So.2d 1216 (Fla. 5th DCA 2007). "In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the state that the trier of fact might fairly infer from the evidence." Id. (citing Lynch v. State, 293 So.2d 44, 45 (Fla.1974)). "Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." Siplin v. State, 972 So.2d 982 (Fla. 5th DCA 2007) (quoting McArthur v. State, 351 So.2d 972, 976 (Fla.1977)). Based on our de novo review, we find that the record contains direct evidence that Page corruptly solicited a pecuniary benefit.
Specifically, Jesus Rosario, a local car dealer and would-be real estate developer, testified that he and his three partners, the Stonewood Four, intended to convert 828 apartments into low-income condominiums in Page's city commission district. Rosario estimated the project would generate ten to twenty million dollars in profit. Page had suggested the project to Rosario and one of his partners, Al Pina, and had taken part in preliminary discussions with Wachovia Bank about the project's financing. However, the Stonewood Four never considered including Page or his company, Southwest United Communities ("SWUC") as an equity partner in the project.
Rosario and Pina began receiving voicemails and emails from Page indicating that he wanted to participate in the project and that the City would not support the project unless he was "kept into the loop." In one voicemail, Page stated:
Al Pina? This is Mayor Page[[1]] in Orlando. Uh, I just left city hall as we discussed, uh, the 826, uh, units on the Orange Center. . . . Right now the city is not going to be involved unless Southwest United Communities is involved, okay? In other words, the project is dead  (inaudible). I'm calling Wachovia. Look, you should have known Thursday that that shit was not going to work  (inaudible). Call me, brother, okay? (Inaudible) This thing is not going nowhere. Absolutely nowhere, okay?
In a follow-up email to Pina, Page reiterated that "the Orlando City Council and it's [sic] housing Department will not participate in this project." Page also called Wachovia and informed its representative that the Stonewood Four "no longer ha[d] the support of the City of Orlando," and there were other local developers who could get the deal done.
Based on these communications, Pina perceived that Page was threatening to kill the project and that as a city commissioner, Page had the ability to do so. Rosario also believed that Page, as a public official, had the ability to carry out his threats to kill the project.
Lelia Allen, director of the city housing department, testified that her department provides oversight for the spending of federal, state and local dollars for affordable housing. It reviews proposed projects and makes recommendations to the city council. The city council has to approve the use of government funds to enable developers to acquire and rehabilitate properties. The city council also had to approve any redevelopment project.
Rosario met with Page and told him that SWUC would not have a role in the development *531 project. Page did not react favorably, saying he wanted to be an "equity partner" or have an "equity piece" of the project. State Attorney's Office Investigator Roger Floyd testified that Page gave him a voluntary statement in which Page acknowledged he was a city commissioner and also chief executive officer of SWUC. Page stated that his SWUC salary depended upon how much money came into the organization. Page also admitted sending the emails and voicemails to Rosario and Pina.
Based on the above evidence, the trial court properly denied Page's motions for judgment of acquittal on both counts. There was direct evidence that Page solicited an "equity piece" in the development project and repeatedly threatened that the city commission and housing department would not support the project if he was not involved in it. Accordingly, we affirm Page's convictions.
AFFIRMED.
PALMER, C.J. and EVANDER, J., concur.
NOTES
[1] Previously, Page had been interim mayor of Orlando and still referred to himself as "Mayor Page."