BENTON, J.
 

 Ashley Ellen Grant appeals her conviction for uttering an altered check in violation of section 831.09, Florida Statutes (2007). She contends her motion for judgment of acquittal should have been granted because the evidence that she knew the check had been altered and that she intended to injure or defraud was insufficient. We affirm.
 

 Summer Miller, a teller at Vystar Credit Union, testified that Ms. Grant presented the check for payment on October 17, 2007, saying that the person who had given her the check had misspelled her name: Named as payee was “ASHALY, GRANT.” Ms. Grant endorsed the check twice, once spelling her name correctly and once spelling it as it was spelled on the front of the check, albeit without the comma between the first and last names. The teller also testified that she wrote down Ms. Grant’s address, employment, home phone number, and driver’s license number before cashing the check.
 

 A week later, J.A. Stokes, a postal inspector, another postal inspector, and Detective Bill Roberts of the Clay County Sheriffs Office interviewed Ms. Grant at her residence where, Stokes testified, she acknowledged cashing the check: She told them that she was given the check by
 
 *165
 
 Laramie Gore, whom she had previously dated, acknowledging she had “doubts” about cashing the check; that she knew something was up; and that she was suspicious about what was going on. She told her interrogators that Mr. Gore told her he had the check made out to her because the person who drew the check owed him money, but he was unable to cash a check without identification. She also said she had not known that anyone owed Mr. Gore $900 (the approximate amount of the check), and that he gave her $200 after she cashed the check. She claimed this was because Mr. Gore had backed into her car two years earlier and still owed her for the damage that had caused.
 

 Detective Roberts essentially corroborated this account of the interview. According to him, Ms. Grant told them that Laramie Gore called her and asked her to cash the check, telling her that a person who owed him money made the check payable to her because he did not have proper identification. Ms. Grant also told them, according to Detective Roberts, that, when Mr. Gore called and asked her to cash a check, she thought it was “funny” and that she should have known better, but cashed it anyway because she needed money; and that she did not think anyone should owe Laramie Gore $900.
 

 Ms. Grant’s written statement on the day of this initial interview reads: “Laramie Gore had given me a check and told me someone he knew owed him money and they wrote him a check to cash. Laramie said he didn’t have an ID. So he said he asked the person who owed him money to sign my name on there so I could cash it for him. Laramie said that he was gonna give me some of the money for hitting my car a while ago. He followed me to the bank. I cashed the check for him, came outside, and gave him the money. I went to Vystar in Fleming Island. He took approximately $700 and I got approximately $200.... Detective and agents brought by pictures and I identified the guy as Ben, the person who lives with Laramie.”
 

 Ms. Grant gave a second written statement at a police substation on November 13, 2007, after she was shown “photo lineups” including pictures of Laramie Gore and Ben Armington. Detective Roberts testified that between Ms. Grant’s initial interview and her second written statement, he had also shown her a still photograph made from a surveillance videotape, which depicted Ben Armington removing an envelope from a mailbox. In her second statement, Ms. Grant wrote: “Today I saw a lineup and stated that ... on the first lineup on the bottom, middle, number five was Laramie Gore and on the second lineup top, middle, number two was Ben. They had said that the person who owed the money owed it to Ben, although Laramie handed me the check and I handed Laramie the money.” Detective Roberts testified that it seemed Ms. Grant was being “more defensive” of Laramie Gore during the second interview.
 

 Teressa Hughes testified that she had written the check, but that she had made it payable to “ASI,” an insurance company, not appellant; and that she had put it in an envelope, and placed the envelope in the mailbox behind her home, which also served as her office. Examining her bank records online a few days later, she discovered the check had been altered so that it was payable to “Ashaly, Grant.” Ms. Hughes, who has a video surveillance system outside her home, testified she reviewed tapes and found a videotape depicting a man apparently taking an envelope from her mailbox, then turned the videotape over to police.
 

 At the close of the state’s case, the defense moved for judgment of acquittal, arguing the prosecution had not estab
 
 *166
 
 lished that Ms. Grant knew the check had been altered, or proven in any other way that she had the intent to defraud or injure anyone. Defense counsel argued the case was “totally circumstantial” and that the evidence was insufficient to overcome a reasonable hypothesis of innocence. The trial judge denied the motion, ruling there was evidence that she knew or should have known
 
 [1]
 
 the check was altered, and that, if the jury found she had knowledge of the alteration, it could infer that she presented the check intending to injure or defraud the person who had drawn it.
 

 “The courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.”
 
 Lynch v. State,
 
 293 So.2d 44, 45 (Fla.1974). But the state may rely on circumstantial evidence.
 
 See Grover v. State,
 
 581 So.2d 1379, 1380 (Fla. 4th DCA 1991) (“It is black-letter of course that intent, being a state of mind, is rarely if ever susceptible of direct proof. Almost inevitably, as here, it must be shown solely by circumstantial evidence.” (citing
 
 State v. Waters,
 
 436 So.2d 66 (Fla.1983)));
 
 Szilagyi v. State,
 
 564 So.2d 644, 646 (Fla. 4th DCA 1990) (“Since intent necessarily involves the state of mind of the perpetrator, very often circumstantial evidence is the only evidence available to prove intent.”). Like intent, knowledge (or its absence) must often be inferred from surrounding circumstances.
 
 See Heineman v. State,
 
 327 So.2d 898, 898 (Fla. 3d DCA 1976) (stating knowledge is “a state of mind ... often not subject to direct proof’);
 
 State v. Norris,
 
 384 So.2d 298, 299 (Fla. 4th DCA 1980) (stating that intent “may be inferred from ... surrounding circumstances” and that in “this respect knowledge is like intent”).
 

 Ms. Grant argues that, because evidence that she knew the check to be altered and that she intended to injure or defraud was circumstantial, the heightened standard set forth in
 
 State v. Law,
 
 559 So.2d 187 (Fla.1989), applies. In
 
 Law,
 
 our supreme court announced that a
 

 special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence. Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.
 

 Law,
 
 559 So.2d at 188 (citations omitted). She begins from the premise that this “special standard of review,”
 
 id.,
 
 applies “when proof of one or more elements of the offense depends entirely on circumstantial evidence.”
 
 Linn v. State,
 
 921
 
 *167
 
 So.2d 830, 834 (Fla. 2d DCA 2006) (citing
 
 Boyd v. State,
 
 910 So.2d 167, 180 (Fla.2005)).
 

 In
 
 Boyd,
 
 however, rather than classifying evidence as direct or circumstantial vis-á-vis each discrete element, the supreme court stated (consistently with the decision in Law) merely that a special standard of review applies “when a ease is based wholly on circumstantial evidence.”
 
 Boyd,
 
 910 So.2d at 180.
 
 See Jenkins v. State,
 
 1 So.3d 317, 320 (Fla. 3d DCA 2009) (“[W]here one or more of the elements of the crime are proven by direct evidence, this heightened standard of review is not applicable.” (citing
 
 State v. Burrows,
 
 940 So.2d 1259, 1262 (Fla. 1st DCA 2006))). The state presented direct evidence that Ms. Grant cashed the check.
 
 See State v. Burrows,
 
 940 So.2d 1259, 1262 (Fla. 1st DCA 2006) (“When the State presents both direct and circumstantial evidence, the special standard of review applicable to circumstantial evidence cases does not apply.” (citing
 
 Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002)) (emphasis omitted)). The present case was not based entirely on circumstantial evidence.
 

 In any event, the evidence the state presented meets
 
 Law’s
 
 “special standard.” Assuming Ms. Grant succeeded in identifying any hypothesis of innocence— not contradicted by her own out-of-court statements which also came in evidence
 
 [2]
 
 — the evidence as a whole was sufficient for the jury to conclude that she knew that the stranger’s check her Mend asked her to cash was not originally drawn in her favor, and that neither the drawer of the check nor anybody to whom it rightfully belonged intended any part of the proceeds for her use. Ms. Grant initially told investigators that the person who wrote the check owed money to Laramie Gore, but later said that the debtor owed Ben Arm-ington. She told investigators that she was suspicious, that she found it odd that someone would owe Mr. Gore money, and that she cashed the check anyway because she needed money. After cashing the check, she admitted, the money was divided and she took a share. In the circumstances, the jury’was free to disbelieve her protestations of innocence.
 

 Affirmed.
 

 LEWIS and CLARK, JJ„ concur.
 

 [1]
 

 . On appeal, Ms. Grant argues that the trial judge applied an erroneous evidentiary standard in denying the motion for judgment of acquittal, citing
 
 Heath v. State,
 
 382 So.2d 391, 392 (Fla. 1st DCA 1980);
 
 Taylor v. State,
 
 241 So.2d 426, 426-27 (Fla. 3d DCA 1970); and
 
 Hitt
 
 v.
 
 State,
 
 209 So.2d 689, 690 (Fla. 1st DCA 1968).
 
 But see Jones v. State,
 
 790 So.2d 1194, 1197 (Fla. 1st DCA 2001) (ruling that “a judgment of acquittal presents an issue of law”).
 

 In order to convict, the jury had to find beyond a reasonable doubt that she knew the check had been altered, and the jury was so instructed.
 
 See Linn v. State,
 
 921 So.2d 830, 833 (Fla. 2d DCA 2006). In concluding that she "should have known” the check was altered, the trial court made a determination'— with which we agree — that the evidence met an objective test,
 
 i.e.,
 
 permitted the inference that she actually knew, and so required denial of the motion for judgment of acquittal.
 

 [2]
 

 . Even under the heightened standard applicable in wholly circumstantial cases,
 

 [t]he state is not required to "rebut conclusively every possible variation” of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
 

 State v. Law, 559
 
 So.2d 187, 189 (Fla.1989) (internal citation and footnote omitted).