HAWKES, C.J.
This is an appeal from defendant’s convictions for deriving support from the proceeds of prostitution, in violation of section 796.05(1), Florida Statutes (2009), and transporting another individual for the purposes of prostitution, in violation of section 796.07(2)(d), Florida Statutes (2009). Of the several arguments that defendant raises on appeal, only two merit discussion: first, that the trial court erred in denying his motion for judgment of acquittal as the evidence did not demonstrate he knew or had reason to believe prostitution would occur; and, second, that the trial court violated his Sixth Amendment rights by admitting an audiotape containing incriminating statements into evidence. We find these claims unpersuasive and affirm defendant’s convictions.

Facts

At trial, the evidence showed defendant managed an escort service which advertised on the internet. An undercover officer testified he scheduled a meeting with one of defendant’s escorts based on a series of these advertisements, each of which were introduced into evidence. The officer testified that the cost of the escort’s time was $250 per hour, and that they arranged to meet at an apartment commonly used by law enforcement for undercover operations. The officer stated that on the day of the meeting, defendant arrived at the apartment with the escort and accepted the money.
*184 At this point, an audiotape of the officer’s interaction with defendant and the escort was introduced over objection. The audiotape was played for the jury and revealed that defendant asked for the $250, then left the apartment after receiving the money. Over the audiotape, the officer then asked if the escort would engage in sexual activity. She agreed, prompting other officers, who had been monitoring the situation, to enter the apartment and arrest her. Defendant was arrested separately.
Throughout the trial, defendant denied that he knew or had reasonable cause to believe prostitution would occur when he left the apartment. To support this assertion, he testified each of the escorts working for him had signed a contract forbidding prostitution. He pointed out- that each of the advertisements in evidence contained a disclaimer with slight variations of the following:
[mjoney exchanged is for time, companionship, and legal services such as nude modeling, erotic dancing, body rub, etc. Anything else that may occur is between two consenting adults and has not been promised or contracted for!
Defendant testified the advertisements featured scantily-clad women not to imply prostitution would occur, but simply because such images attracted clients, as is the case with many businesses catering to men. Regarding this particular case, defendant emphasized to the jury that he was not privy to any conversations regarding sexual activity while he was in the apartment.
Ultimately, the jury rejected defendant’s claims and explanations and found him guilty as charged. This appeal followed.

A defendant’s state of mind, or intent, is an element that the jury must infer from the evidence.

At the close of the State’s case, defendant moved for a judgment of acquittal, arguing the State had failed to prove he knew or had reason to believe the escort would engage in prostitution. The trial court denied the motion. On appeal, defendant reasserts that the evidence presented at trial must, as a matter of law, result in his acquittal. This argument is flawed.
We review a trial court’s ruling on a motion for judgment of acquittal de novo. See State v. Burrows, 940 So.2d 1259, 1261 (Fla. 1st DCA 2006); Robinson v. State, 936 So.2d 1164, 1166 (Fla. 1st DCA 2006).
An element of both of the charges for which defendant was convicted required the State to prove he knew or had reasonable cause to believe prostitution might occur. Section 796.05(1) states it shall be unlawful for any person “with reasonable belief or knowing another person is engaged in prostitution” to derive support from the earnings of such prostitution. Section 796.07(2)(d) prohibits any person from transporting another “with knowledge or reasonable cause to believe that the purpose of such [] transporting is prostitution.” The statute goes on to define “prostitution” as “the giving or receiving of the body for sexual activity for hire but excludes sexual activity between spouses.” § 796.07(l)(a), Fla. Stat. The State offered direct evidence that defendant took the $250 through the testimony of the undercover officer. This is direct evidence the jury could accept to establish prostitution, and was obviously material to both offenses.
In cases such as this, where the State offers direct evidence material to at least one element of each charged offense, an appellate court must consider “the evidence and all reasonable inferences from the evidence in a light most favorable to the [S]tate[,]” and must simply ensure *185 competent, substantial evidence supports each element of each offense. Jones v. State, 790 So.2d 1194, 1197 (Fla. 1st DCA 2001); see also Burrows, 940 So.2d at 1261,[1]
The only real question for the jury in this case was defendant’s state of mind. Whether the evidence sufficiently demonstrates a state of mind or establishes a specific intent is considered a question of fact for the jury to decide. See State v. Ladrig, 707 So.2d 819, 820 (Fla. 2d DCA 1998) (stating “[t]he issue of knowledge [ ] is usually an ultimate question that the jury must decide on factual inferences”); see also Nedd v. State, 965 So.2d 1287 n. 1 (Fla. 2d DCA 2007). Accordingly, if the jury could reasonably infer from the evidence presented at trial that defendant knew or had reason to believe the escort would engage in prostitution, the question must be left for the jury to decide. Several points can be made to illustrate how the evidence here clearly supported such an inference.
First, the internet advertisements strongly implied sexual activity would occur if the escort was hired. The advertisements, which were listed under the heading of “erotic services” on Craigslist and featured pictures of a scantily-clad woman, described the escort as “5'5,120 lbs. with a sexy toned body, perky 36-Cs, and a face like an angel!” One of the advertisements stated “Your Ultimate Pleasure and Pure Satisfaction Is My Goal!! I may be young and new, but I know how to please a man!”
Second, the very disclaimers that defendant relies on for his defense could be accepted by the jury as further evidence of guilt. Although the disclaimers stated the escort service was not for prostitution, the jury was not required to accept them at face value. Given the substance of the advertisements, it would be rational for a juror to infer that the disclaimers were bogus. The jury could reasonably infer the disclaimers were either an attempt to emphasize that the escort service’s primary purpose was prostitution or designed to be used as a defense if defendant was ever arrested.
Third, the jury may have used the evidence of defendant’s actions preceding his arrest to infer guilty knowledge on defendant’s part. Defendant admitted to driving the escort to an apartment to meet with an adult male neither of them knew. This adult male wanted to pay $250 per hour for the escort’s “companionship” after seeing the advertisements. The escorting was to occur only within the apartment. Defendant testified he took the money, then left the escort alone in the apartment with the unknown male.
Viewing the conduct in conjunction with the substance of the advertisements, and drawing all reasonable inferences in favor of the State, as we are compelled to do, we conclude a rational trier of fact could reasonably infer that defendant knew or had *186 “reasonable cause to believe” the escort would engage in prostitution.
Finally, if we adopted defendant’s argument, it would have bizarre consequences. Defendant argues a jury, as a matter of law, could not conclude he knew or had reasonable cause to believe prostitution would occur because his advertisements contained a disclaimer and each escort signed a contract forbidding prostitution. In essence, defendant argues his self-serving statements and actions must be accepted by the jury, along with each inference he would like to be drawn.[2] If this were the law, any defendant, by planning ahead, could avoid a conviction for any crime requiring proof of a certain state of mind. The burglar could buy an advertisement in the local paper declaring he “would never enter a home with the intent of committing a crime therein.” The would-be murderer, with a little planning, could post on the internet that although he planned to hurt the victim, he had “absolutely no premeditated intent to kill.”
These examples point out the folly of arguing that self-serving statements denying intent will, as a matter of law, prevent conviction. Here, the only hope defendant had for an acquittal was that the jury would find his disclaimers, contracts, and denials persuasive. They didn’t. The denial of the motion for judgment of acquittal must be affirmed.

The audiotape did not contain “testimonial statements.”

At trial, defendant objected to the admission of the audiotape containing the conversation between the escort and the undercover officer, claiming it violated his rights under the Confrontation Clause of the United States Constitution. Defendant argued the audiotape should not be admitted because the escort, who had made several incriminating statements on it, was not subject to cross-examination. The trial court overruled the objection without comment. We concur with this ruling as the statements in question were not testimonial.
Admission of a hearsay statement against an accused violates the Confrontation Clause of the Sixth Amendment to the United States Constitution only when: (1) the statement is testimonial, (2) the declar-ant is unavailable, and (3) the defendant did not have prior opportunity to cross-examine the declarant. Blanton v. State, 978 So.2d 149, 154 (Fla.2008).[3] We need not address the second and third prongs of this test as the defendant cannot even show the statement was testimonial.
 A testimonial statement “ ‘is typically a solemn declaration or affirmation made for purposes of establishing or proving some fact.’ ” Shiver v. State, 900 So.2d 615, 617 (Fla. 1st DCA 2005), quoting Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Such statements are limited to those “made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial.” Id. Accordingly, the test for testimonial statements is an objective one, hinging on whether a reasonable declarant would anticipate the *187 statements would be used later in the investigation or prosecution of a crime. See Shennett v. State, 937 So.2d 287, 291 (Fla. 4th DCA 2006).
Here, it cannot be said that a reasonable person, placed in the escort’s position at the time the audiotape was made, would have anticipated the statements would later be used for prosecutorial purposes. It is uncontested that the escort did not know she was speaking to an undercover police officer. Nor did she know the conversation was being recorded. Without such knowledge, she had no way to know the statements would later be used in the prosecution of a crime. Accordingly, the statements cannot be considered testimonial and the admission of the audiotape did not violate the Confrontation Clause.

Conclusion

We affirm defendant’s convictions for deriving support from the proceeds of prostitution and transporting another individual for the purposes of prostitution. In so doing, we find the motion for judgment of acquittal was properly denied because a reasonable jury could infer from the evidence that defendant knew or, at the least, had reason to believe that prostitution would occur. We also find the admission of the audiotaped statements did not violate the Confrontation Clause because they were not testimonial. For the foregoing reasons, the trial court’s rulings are AFFIRMED.
VAN NORTWICK and THOMAS, JJ„ concur.

. Defendant argues this Court should use the standard for reviewing denials of motions for judgment of acquittal brought in circumstantial evidence cases. This standard requires the State to present evidence which is inconsistent with the defendant’s version of events. See State v. Ling, 906 So.2d 1231, 1233-34 (Fla. 1st DCA 2005). Although use of this standard would still not benefit defendant, we decline to use it as it is inapplicable here. For this standard to apply, the evidence for each element of each offense must be "wholly circumstantial.” Pagan v. State, 830 So.2d 792, 803 (Fla.2002); see also Grant v. State, 13 So.3d 163, 167 (Fla. 1st DCA 2009). Here, as noted, the evidence for each charge was not "wholly circumstantial” as defendant admitted to transporting the escort to the apartment and to receiving $250 from the undercover officer. Applying the circumstantial evidence standard would be error.

. the jury had a choice to accept or reject whatever pieces of evidence it wished and to draw any reasonable inferences therefrom. As stated in Florida Standard Jury Instruction 3.9 (2009), each juror "may believe or disbelieve all or any part of the evidence or the testimony of any witness.”

. The Sixth Amendment’s right to confrontation is applied to the states through the Fourteenth Amendment and is echoed in article I, section 16(a) of the Florida Constitution. See Conner v. State, 748 So.2d 950, 954 (Fla.1999).