788 So.2d 1036 (2001)
N.K.W., Jr., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 2D99-4697.
District Court of Appeal of Florida, Second District.
March 16, 2001.
*1037 James Marion Moorman, Public Defender, and Carol J.Y. Wilson, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann Pfeiffer Howe, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
N.K.W. appeals his withheld adjudication of delinquency for possession of a controlled substance. He asserts that the State failed to rebut his reasonable hypothesis of innocence, and, thus, his motion for judgment of acquittal should have been granted. We agree and reverse.
N.K.W. was alleged to be delinquent by reason of actual or constructive possession of a controlled substance, to wit, lysergic acid dielthylamide (LSD). He entered a plea of not guilty. The case proceeded to a trial in the juvenile division of the circuit court.
At trial, the evidence adduced demonstrated that on July 23, 1999, in the early morning hours, several police detectives executed a search warrant on the residence of S.S., who was suspected of narcotics activity. A party, hosted by S.S., had been in progress at his residence throughout the previous night.
Several people were located in S.S.'s bedroom when the raid began. While collecting some evidence from the bedroom closet, one of the detectives noticed a wallet in plain view on a shelf in the closet. The detective opened it and in the change compartment found a small plastic bag containing several items described as "gel tabs" which the detective suspected contained LSD. The detective also found a driver's license in the wallet. The driver's license was issued to N.K.W.
The detective took the suspected drugs out of the wallet. He then showed the wallet to N.K.W. who acknowledged that the wallet was his. N.K.W. opened the wallet, took out his driver's license, and handed it to the detective. The detective never asked N.K.W. if the plastic bag located in the wallet belonged to him. No fingerprints were lifted from the bag. The detective arrested N.K.W. for possession *1038 of a controlled substance.[1]
N.K.W. testified at trial that he had known S.S. since childhood and had known that S.S. had been selling drugs out of his house for about three years. He stated that S.S. had hosted a party on the pertinent date and suggested that the party was partially in celebration of his upcoming birthday. N.K.W. acknowledged that he had attended the party from 4:00 p.m. of the previous day until the search warrant was executed immediately before 6:00 a.m., a time span of approximately fourteen hours. According to N.K.W., he and others had been "smoking marijuana, just hanging out" throughout the course of the evening.
N.K.W. explained that he had placed his wallet and house key in S.S.'s closet to ensure that they would not be lost. N.K.W. indicated that he had not stayed in the bedroom the entire night, that there had been up to twenty or thirty people in the house earlier, that everyone had access to the bedroom where the wallet was found, and that about seven people still remained in the bedroom when the police arrived.
During his testimony, N.K.W. admitted that "I'd seen the tablets earlier on throughout the night, but I didn't purchase them or anything." N.K.W. also denied that anyone had given him the tablets found in the plastic bag in his wallet. N.K.W. stated that he did not know how the tablets got into his wallet, but he theorized that someone might have "stuck" the items there due to his impending birthday.
As in S.B. v. State, 657 So.2d 1252 (Fla. 2d DCA 1995), this case must be analyzed as a constructive possession case because any number of people had access to the wallet in which the bag containing the contraband was found. As such, the State was required to establish: "(1) the accused's dominion and control over the contraband; (2) the accused's knowledge that the contraband [was] within his or her presence; and (3) the accused's knowledge of the illicit nature of the contraband." Id. at 1253. Further, because the wallet had been accessible to several people, knowledge of the presence of the contraband and the accused's ability to maintain control over it could not be inferred, and had to be established by independent proof. Id. See also Cook v. State, 571 So.2d 530 (Fla. 1st DCA 1990) (holding that the State's evidence was not inconsistent with the defendant's reasonable hypothesis of innocence that someone else placed a crack pipe in her purse where there was no direct evidence linking the defendant to the pipe, the defendant had placed her purse on a bar while she danced, and any number of patrons had access to her purse during that interim period which immediately preceded law enforcement's raid of the premises).
Although N.K.W. acknowledged ownership of his wallet, he was never asked if he owned the plastic bag contained within the wallet, and no fingerprints were obtained from that bag. He testified that he did not purchase the LSD contained within the bag and denied that anyone had given him the LSD. No direct evidence was introduced to establish that N.K.W. knew that the bag was in his presence or that it contained contraband.
Accordingly, the adjudication is reversed and remanded with directions to the juvenile *1039 court to enter a judgment of acquittal on the charge of possession of LSD.
DAVIS, J., concurs.
PARKER, A.C.J., concurs specially.
PARKER, Acting Chief Judge, concurring.
I reluctantly concur with the majority opinion because I believe we are constrained to follow our decision in S.B. v. State, 657 So.2d 1252 (Fla. 2d DCA 1995). I write solely to point out that it is the utter lack of any evidence other than the mere location of the LSD that compels this result.
Most of the cases involving constructive possession of illegal drugs involve contraband found in a vehicle containing two or more persons. See, e.g., Skelton v. State, 609 So.2d 716 (Fla. 2d DCA 1992); Rogers v. State, 586 So.2d 1148 (Fla. 2d DCA 1991). However, a few Florida cases have involved contraband found in a container known to belong to a particular person. All of those cases have required the State to present some evidence that the defendant knew of the presence of the contraband. Evidence of the location of the contraband standing alone is simply not enough to support a conviction.
For example, in S.B., S.B. admitted that he owned a plastic grocery bag found in the trunk of a car stopped for a traffic violation. S.B., 657 So.2d at 1253. A small amount of marijuana was found in a container located inside the grocery bag. Id. At trial, S.B. denied knowledge of the marijuana and testified that the container and a shirt found in the bag did not belong to him. Id. This court analyzed the elements of constructive possession and reversed S.B.'s conviction, stating: "We recognize that the state is not required to rebut conclusively every possible variation of events that could be inferred from circumstantial evidence, but the state is obligated to present evidence which is inconsistent with the defendant's theory of events." Id.
Similarly, in Cook v. State, 571 So.2d 530, 531 (Fla. 1st DCA 1990), Cook left her open purse on the bar while she went to dance. While Cook was dancing, law enforcement raided the club. Id. During the raid, law enforcement found a crack pipe in Cook's purse. Id. In reversing Cook's conviction, the court noted that several people had access to Cook's open purse while she was dancing and during the confusion of the raid. Id. Because there was no evidence connecting Cook to the crack pipe other than its location, the court held that the State had failed to prove constructive possession. Id. at 532.
More recently, in E.H.A. v. State, 760 So.2d 1117, 1119 (Fla. 4th DCA 2000), a high school principal found a zippered backpack in the trunk of a car owned by M.H. Inside the backpack, the principal found school books and papers belonging to E.H.A., a wallet containing E.H.A.'s identification, and a pipe containing marijuana residue. Id. Inside E.H.A.'s wallet, the principal found two baggies containing marijuana residue. Id. E.H.A. admitted that the backpack was his, but testified that he had last seen the backpack on the Friday before it was discovered when he had left it at another friend's house. Id. He denied putting either the marijuana or the pipe in the backpack. Id. In reversing his adjudication of delinquency, the Fourth District noted:
The only evidence presented by the State was the fact that the contraband was found in a backpack and wallet owned by E.H.A.; E.H.A. was not in proximity to the contraband when it was discovered and there was no independent *1040 evidence that he was aware of the contraband's presence in his backpack.
Id.
In contrast, in G.T.L. v. State, 710 So.2d 746 (Fla. 5th DCA 1998), G.T.L. was arrested after a bag of cannabis was discovered under his book bag, which was near two other book bags, while he stood nearby with two other boys. G.T.L. testified that the cannabis was not his and that he did not know why the cannabis was located under his book bag. Id. However, the State presented evidence that G.T.L. knew that the cannabis was under his book bag and knew of its illicit nature. Id. Because the State presented evidence that G.T.L. knew of the presence of the cannabis and because the trial court found G.T.L.'s denials not to be credible, the trial court adjudicated G.T.L. delinquent. Id. In affirming the adjudication, the Fifth District stated:
The trial court determined that defendant's testimony was not credible and the state had presented sufficient testimony to prove defendant's constructive possession of the cannabis. The instant record supports the trial court's ruling that the state established that defendant knew the cannabis was within his presence, knew the illicit nature of the cannabis, and that he had sole or shared dominion over it.
Id. (emphasis added).
This case is a very close case, as was S.B. In this case, as in S.B., Cook, and E.H.A., the State presented no evidence that N.K.W. knew of the LSD in his wallet. It is this total absence of any evidence of knowledge that requires us to reverse the conviction. Had the law enforcement officers asked N.K.W. if he knew what the "gel tabs" were or asked if the "gel tabs" in his wallet were his, N.K.W.'s answer might possibly have created that additional piece of evidence needed to support an affirmance. Cf. Schmitt v. State, 614 So.2d 637 (Fla. 4th DCA 1993) (noting that the location of the contraband together with the defendant's giving of false information to the arresting officer was sufficient to allow the case to go to the jury on the issue of constructive possession). Had the law enforcement officers fingerprinted the baggie containing the "gel tabs," those results might also have created an additional piece of evidence to support an affirmance. In the absence of such evidence, I must concur with the result reached by the majority.
NOTES
[1] The LSD was contained in a plastic substance, also referred to as "windowpanes." The drug itself was not visible to the naked eye. A test later conducted in the Florida Department of Law Enforcement's criminal laboratory confirmed that LSD was present in the plastic.