THOMAS, J.
Appellant appeals his conviction for possession of a firearm by a convicted felon. We address only the first issue, whether the trial court erred by denying the motion for judgment of acquittal (JOA), as we reverse on this ground and order Appellant’s discharge from the conviction.

Facts

While in the course of executing a search warrant, police arrived at the residence in question; inside were Appellant and four other males. Adjacent to the residence was a fenced-in area where a newer-model Chrysler was located, with other cars. Detective Hanson was the first officer to search the Chrysler. In the glove compartment he found a rental car agreement in Appellant’s name with what appeared to be Appellant’s signature. According to the agreement, the rental period began on August 29, 2013, and was due to end at 6:00 p.m. on September 5, 2013, the day of the search.
In the front-seat center console, which was closed, the detective found a handgun and a receipt for payment of a T-Mobile cell phone bill. Appellant’s name was on *215 the receipt, which reflected that the bill had been paid in cash two days before the search. Another officer noted a number of items in the back seat area, including a student handbook. No DNA or fingerprint testing was done on the firearm or any other items, and no one in the residence claimed ownership of the gun.
Detective Hanson was unable to recall with certainty whether the car was locked. None of the testifying officers could recall how the car keys were obtained, when the men in the residence had arrived there, or who drove the rental car to the residence that day, who had been driving it during the rental period, or who owned the various items in the back seat area of the car.
Appellant moved for JOA at the close of the State’s evidence, arguing that the State failed to prove a prima facie case of possession of a firearm. Acknowledging that the firearm was found in the closed center console of a vehicle that contained items that purportedly were Appellant’s, Appellant argued that the ear was located within a residence that contained several people; no one identified Appellant as the sole driver of the Chrysler; no DNA or fingerprint evidence linked Appellant to the firearm; and the keys to the vehicle were not obtained from Appellant. The State argued that the element of knowledge was established by the location of the T-Mobile receipt dated September 3, 2013, found in the same console as the firearm. In denying the motion, the court acknowledged that the fact that the car was rented in Appellant’s name was insufficient to prove possession of the gun, but found that, at that point in the trial, there was no evidence that anyone other than Appellant had been in the car. The court also acknowledged, however, that “nobody is really sure exactly where the keys came from either. But in the end you’ve got this phone bill sitting there in the container which is holding the gun, and I think that is enough to require the Court to deny” the motion.
Appellant then called one witness, Mr. Byrd, who testified that he drove the rental car all day on August 31, 2013, and that others were in the car with him, but he had not driven it since that day. When he was finished driving the car, the witness turned it over to Appellant’s girlfriend. He also testified that, in addition to the girlfriend, two of the men who were at the residence when police arrived had also driven the car during the week before the search. Mr. Byrd testified that on the day of the search he drove to the residence in a car belonging to Appellant’s girlfriend. Mr. Byrd did not observe the rental car when he arrived, and Appellant was alone at the residence. Mr. Byrd testified that he did not know how either Appellant or the other men got to the residence, or who drove the rental car that day. Mr. Byrd testified that, although he owned a handgun, the firearm found in the rental car was not his.[1]
Appellant rested his ease and renewed his motion for JOA, adding to his previous argument that he had presented evidence that other persons had been in the rental car during the week prior to the search. The trial court acknowledged the circumstantial nature of the State’s case and that this required the State to present evidence rebutting Appellant’s reasonable hypothesis of innocence:
However, I think the state has done that again with the phone bill being there; also the fact that [Byrd] said he *216 gave the car to [Appellant’s] wife or girlfriend. The girlfriend was not there. His girlfriend didn’t drive it, okay. [Byrd] had no idea who drove it over there on the day in question. ; And, again, you’ve got the phone bill in there from a very close ... date to when the vehicle was searched and the gun was found and I think that the phone bill ... identifies [Appellant] and the container ... there is something that identifies [Appellant] in the container that is holding the gun ... I think the state ... has some evidence to rebut that reasonable hypothesis of innocence....
The trial court found that this was not undermined by Mr. Byrd’s testimony, and pointed out that the gun did not belong to Mr. Byrd. The court also found that it “clearly” wasn’t the girlfriend to whom Byrd handed over custody of the vehicle.

Analysis

A trial court’s denial of a motion for JOA is reviewed de novo to determine if the evidence is legally sufficient to sustain a conviction. Jones v. State, 790 So.2d 1194 (Fla. 1st DCA 2001). An appellate court must consider the evidence and all reasonable inferences from the evidence in a light most favorable to the State. Lynch v. State, 293 So.2d 44 (Fla.1974). Here, the State’s case was based on a theory of constructive possession of the handgun.
Florida law requires this court to apply a “special” standard of review in circumstantial evidence cases, such that, when viewing the evidence in a light most favorable to the State, this court must determine whether the evidence viewed in this light excludes every reasonable hypothesis of innocence. State v. Law, 559 So.2d 187 (Fla.1989). If such evidence has been introduced at trial which contradicts any reasonable hypothesis of innocence, the jury’s verdict of guilt must be affirmed, as it is solely the prerogative of the factfinder to accept or reject contradictory evidence. Id. at 188. This “special standard” applicable in circumstantial evidence cases has been questioned in Knight v. State, 107 So.3d 449 (Fla. 5th DCA), rev. granted, 151 So.3d 1226 (Fla.2014), in which the Fifth District noted that the “special standard” is inconsistent with Florida’s Standard Jury Instructions in Criminal Cases, federal law, and the majority of jurisdictions. Under the United States Constitution, no such “special standard” is required. Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citing Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). Under federal law, the “rational trier of fact” test is the rule of law. Id. And of course, in Tibbs v. State, 397 So.2d 1120 (Fla.1981), our Supreme Court prohibited appellate courts from reweighing the evidence when reviewing an order denying a motion for a judgment of acquittal.
In Westbrooks v. State, the Second District affirmed the denial of a motion for judgment of acquittal, stating:
Generally, a motion for judgment of acquittal should be denied “[i]f after viewing the evidence in the light most favorable to the state, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt.” Pagan v. State, 830 So.2d 792, 803 (Fla.2002). However, in cases in which the evidence is “wholly circumstantial,” a special standard of review applies: “the evidence must also exclude the defendant’s reasonable hypothesis of innocence.” Id; see also Mosley v. State, 46 So.3d 510, 526 (Fla. 2009) (“If the state presents both direct and circumstantial evidence, courts do not apply the special standard of review applicable to circumstantial evidence *217 cases.” (citing Pagan, 830 So.2d at 80S)). “Under the circumstantial evidence standard, when there is an inconsistency between the defendant’s theory of innocence and the evidence, when viewed in a light most favorable to the state, the question is one for the finder of fact to resolve and the motion for judgment of acquittal must be denied.” Durousseau v. State, 55 So.Bd 548, 557 (Fla.2010). “ ‘The state is not required to ‘rebut conclusively every possible variation’ of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the [defendant's theory of events.’” Id. (quoting State v. Law, 559 So.2d 187, 189 (Fla.1989)). The state is not required to rebut a hypothesis of innocence that is unreasonable. See Henderson v. State, 679 So.2d 805, 806 (Fla. 3d DCA 1996)(“While we must agree with [appellant] that the State was required to provide evidence inconsistent with any reasonable hypothesis of innocence, we emphasize that the State was not required to exclude any unreasonable hypothesis.”).
145 So.3d 874, 877-78 (Fla. 2d DCA 2014) (emphasis in original).
In a concurring opinion, two judges of the panel decision expressed their concern with Florida law which requires courts to apply a special rule in circumstantial criminal cases, noting the Fifth District’s analysis in Knight v. State, and the statement there that “Florida should join the federal courts and the vast majority of states that have abandoned use of a special circumstantial evidence standard of review.” Id. at 881 (Morris and Black, JJ., concurring) (quoting Knight v. State, 107 So.3d 449, 457 (Fla. 5th DCA 2013)). The concurring opinion quoted the court in Knighf, stating the special standard improperly disregards the jury’s role and requires the appellate court to ‘“ignore[] the correlation between the ‘strength’ of circumstantial evidence and ‘reasonableness’ of various hypotheses of-innocence.’” Id. Finally, the concurring opinion noted that the court in Knight stated that clarification in the law as to when the special rule on circumstantial evidence must apply would be beneficial. Id.
Here, as did the trial court, we apply the special standard of review of cases involving circumstantial evidence, even assuming that Appellant’s stipulation of his status as a felon, an element of the crime here, constitutes direct evidence, because there was no direct evidence that Appellant possessed the handgun, and his status as felon alone does not constitute proof of guilt. Westbrooks, 145 So.3d at 878 (although the State presented evidence that defendant had been told in advance of robbery, plan, “there was no direct evidence that Westbrooks participated in the robberies.... Therefore, this court must apply the special standard applicable to wholly circumstantial evidence cases. See Kocaker v. State, 119 So.3d 1214, 1225 (Fla.2013).”).
In addition to the circumstantial evidence rule, we apply the rule of law on constructive possession. When the “premises where contraband is found is in joint, rather than exclusive, possession of a defendant, however, knowledge of the contraband’s presence and the ability to control it will not be inferred from the ownership but must be established by independent proof.” Julian v. State, 545 So.2d 347, 348 (Fla. 1st DCA 1989). Here, there is no dispute that no one was in or near the rental car when police arrived at the residence (i.e., no one had possession of the car), the car was rented by Appellant, the console was closed when police searched the car, and both a handgun and a receipt *218 for payment of a cellular phone bill in Appellant’s name were found in the center console of that car. The issue is whether this evidence was sufficient to establish Appellant’s knowledge of the handgun in the console; in other words, to rebut Appellant’s reasonable hypothesis of innocence that, as the trial court summarized, “somebody else drove the vehicle at some point in time, and it is their gun as opposed to [Appellant’s].”
Factually, this case bears sufficient resemblance to Evans v. State, 32 So.3d 188 (Fla. 1st DCA 2010), to warrant reversal.[2] In Evans, police searched a bedroom identified by an informant as the appellant’s, which was in a jointly-possessed home. Police found on the bed in that room a duffel bag containing the appellant’s passport and other items, including a toiletry kit containing illicit drugs. Id. at 189. In part of its discussion as to why reversal was necessary, the court explained: “Because the premises where the officers found the contraband were in joint, rather than exclusive, possession, one cannot infer either the ‘knowledge’ or ‘ability to maintain dominion and control’ element from mere ownership of the residence or proximity to the contraband. The State must establish both elements by independent proof.” Id. at 190.
In Evans, this court addressed S.B. v. State, 657 So.2d 1252 (Fla. 2d DCA 1995), where the Second District concluded that the State failed to prove that S.B. constructively possessed marijuana found in a grocery bag in the trunk of a car carrying him and several other passengers, even though S.B. admitted owning the bag, because the officer never asked if S.B. owned the container in which the marijuana was found, never inventoried the contents of the bag, and never obtained fingerprints from the container. Evans, 32 So.3d at 189. The Evans court also addressed N.K.W., Jr. v. State, 788 So.2d 1036 (Fla. 2d DCA 2001), explaining that “the evidence failed to show N.K.W. constructively possessed LSD found inside a baggy in his wallet, as the wallet was located in plain view on a bedroom closet shelf to which many people attending a party had access.” Id. The court noted that “N.K.W. did not admit owning the LSD, officers obtained no fingerprints from the baggy, and no direct evidence established his knowledge of the presence of the contraband.” Id.
In Evans, this court explained:
The presence of appellant’s passport in the duffel bag suggests he could have placed the passport there. Such an inference, however, provides no time frame with regard to when the contraband came to reside in the bag, nor any help as to appellant’s present dominion over the contraband. Without more, the mere presence of the passport is no better proof of appellant’s knowledge of, and dominion over, the contraband than S.B.’s acknowledgment of ownership of the grocery bag or N.KW.’s admission of ownership of the wallet where officers found the drugs.
32 So.3d at 191.
Here, the learned trial court’s denial of Appellant’s JOA motion focused primarily *219 on the presence in the console of the handgun and the T-Mobile receipt bearing Appellant’s name and dated two days before the search. The court found that this two-day period was sufficiently close in time to infer Appellant’s knowledge of the gun’s presence, and was bolstered by the fact that the girlfriend to whom Mr. Byrd testified he turned over the rental car was not at the residence when police arrived, but the car was. But the State presented no evidence to rebut Appellant’s evidence that other individuals either drove or occupied the car in the intervening two days between the date on the receipt and the search. Also, police could not testify from whom or where they obtained the keys to the car, and could not say who drove the rental car to the residence on the day of the search.
Furthermore, as in Evans, although the presence of the T-Mobile receipt bearing Appellant’s name suggests Appellant may have placed the receipt there, “[s]ueh an inference, however, provides no time frame with regard to when the [gun] came to reside” in the console, “nor any help as to appellant’s present dominion over the [gun].” 32 So.3d at 191. Thus, we hold that the evidence here was insufficient to support a prima facie case that Appellant was in constructive possession of the firearm, and thus we must reverse Appellant’s conviction.
REVERSED with directions to discharge Appellant.
MARSTILLER and BILBREY, JJ., concur.

. Over Appellant's objection, the court allowed the State to elicit testimony from Mr. Byrd that his firearm was found in Appellant’s girlfriend’s vehicle and he did not have a concealed weapons permit, forming the basis of Appellant’s second assertion of error.

. The State relies solely on Wale v. State, 397 So.2d 738 (Fla. 4th DCA 1981), a reliance that is misplaced for two reasons: First, Wale involved a motion to dismiss, not a JOA motion; and second, the contraband at issue in Wale was found inside a box that was labeled with the appellant's name and address, and was found inside Appellant’s bedroom closet. It was in this context that the court in Wale held: "Guilty knowledge can be presumed from the facts and evidence, and once it is shown that the contraband is found in the defendant’s home, in his own closet, in a box bearing his name and address, a jury question is created as to whether he had knowledge of the contraband's presence.” Id. at 740.